UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>TYSHAWN MCDADE,<br>        Defendant. | No. 3:14-cr-00081 (JAM) |

**RULING DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL**

Defendant Tyshawn McDade has filed motions for judgment of acquittal and for a new trial following his conviction after a trial by jury on charges of conspiracy to distribute 280 grams or more of cocaine base between May 2013 and April 2014 (Count 1) and distribution of cocaine base on March 3, 2014 (Count 37). For the reasons set forth below, the Court denies these motions.

**BACKGROUND**

Defendant was principally charged with participation in a conspiracy to distribute crack cocaine in the North End of Hartford. The conspiracy's alleged leader was Melkuan Scott. Defendant was convicted following several days of trial at which the government presented evidence including, but not limited to, the testimony of its case agent identifying many of the alleged conspiracy participants; multiple wiretap conversations involving the defendant, Melkuan Scott, and co-defendant Arthur Stanley, in which they spoke in explicit terms about cocaine transactions; the testimony of other law enforcement agents who observed defendant with Melkuan Scott and other alleged co-conspirators; the testimony of cooperating witness Ricardo Howe who stated that he bought two "treys" (a total of 126 grams of cocaine base) from defendant in the summer of 2013; and the testimony of a confidential source who engaged in a recorded purchase of 28.7 grams of crack cocaine from defendant and Melkuan Scott at Percy

Auto Body store in Hartford on March 3, 2014, and in anticipation of a future half-kilogram transaction. The government has thoroughly and accurately summarized the trial evidence in its post-trial memorandum opposing defendant's motions, and the Court adopts the Government's summary for purposes of this ruling. *See* Doc. #852 at 3–21.

**DISCUSSION**

The standards governing the Court's review of defendant's motions are well established. As to defendant's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), the Court must review the evidence in the light most favorable to the prosecution and sustain the jury's verdict if any rational trier of fact could have found the evidence sufficient to establish the elements of each crime beyond a reasonable doubt. *See United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

As to defendant's motion for new trial pursuant to Fed. R. Crim. P. 33, the Court has broad discretion to set aside a jury verdict and to order a new trial to avert a perceived miscarriage of justice. *See United States v. Truman*, 688 F.3d 129, 141 (2d Cir. 2012). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment,'" such as "where testimony is 'patently incredible or defies physical realities.'" *United States v. McCourty*, 562 F.3d 458, 475–76 (2d Cir. 2009) (alteration in original) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

The trial evidence against defendant was overwhelming and easily sufficient to establish his guilt beyond a reasonable doubt as to both counts. As to the distribution count, the Government presented the testimony of a confidential source who personally bought and

2

received 28.7 grams of crack cocaine from defendant and Melkuan Scott on March 3, 2014. The entire transaction was audio recorded, and—although Melkuan Scott did the talking—the confidential source testified that it was defendant who handed him the crack cocaine and accepted his payment. The reliability of the confidential source's testimony is corroborated not only by the audio recording but by separate testimony of a law enforcement agent who saw defendant enter Percy Auto Body shortly before the transaction.

As to the conspiracy count, defendant does not contest the evidence that there existed a crack cocaine distribution conspiracy involving Melkuan Scott and many others.  Nor does he meaningfully contest the sufficiency of the evidence showing that he discussed and engaged in crack cocaine transactions well in excess of 280 grams of cocaine and often spoke about these transactions on wiretapped telephone calls. Instead, defendant contends more narrowly that there was insufficient evidence to show that he had anything more than a buyer-seller relationship with Melkuan Scott or other conspirators.

The jury was instructed at length on this buyer-seller defense, and the instructions were crafted in light of the Second Circuit's recent decision in *United States v. Brock*, *supra*, in which the Court of Appeals concluded that the evidence did not suffice to show in that case that a particular defendant (Dickerson) had more than a buyer-seller relationship with his alleged co-conspirators (Jackson and Brock). In the *Brock* case, the Court of Appeals noted that "[t]here was no evidence that Dickerson shared profits with Brock or any other members of the organization, that Dickerson had interactions with Jackson or Brock other than the transactions that made him a customer, or that, apart from being a customer, he assisted their operation in any capacity." 789 F.3d at 64.

Here, by contrast, there was ample evidence from which a jury could reasonably have

concluded that defendant's relationship with Melkuan Scott transcended a mere buyer-seller relationship and that, in fact, defendant was a trusted associate of Melkuan Scott and who sought to help Scott's drug trafficking operations succeed. This is a fair inference from the evidence showing that defendant handled crack cocaine on Scott's behalf and accompanied Scott to the meeting with the confidential source on March 3, 2014, where defendant personally handed the confidential source the crack cocaine that was the object of the source's negotiation with Scott and received the payment in return. This is the conduct of an organizational lieutenant, rather than a simple customer of Melkuan Scott.

More than a mere buyer-seller relationship was also implicit from defendant's dealings with Melkuan Scott on December 16, 2013, when defendant fronted crack cocaine to Scott for Scott to complete a transaction with Albert Correa. Doc. #852 at 7–8. Of additional significance is the extensive frequency and volume of defendant's cocaine-related dealings with Melkuan Scott, as confirmed by the numerous wiretap and prison calls. *See* Doc. #852 at 6–14, 20; *see also Brock*, 789 F.3d at 65 (noting that "volume and frequency of transactions" may "under certain circumstances permit[ ] an inference of conspiratorial intent"). In addition, Scott's listing of defendant in his personal journal as one among numerous others to whom he intended to write and to send money during defendant's incarceration is significant evidence of defendant's membership in Scott's trafficking organization. *See* Doc. #852 at 21.

The fact that Ricardo Howe referred to defendant as a "customer" or that defendant lived outside the neighborhood controlled by Melkuan Scott's organization does not compel a conclusion that defendant was not a member of the conspiracy. In short, the Court cannot agree with defendant's claim that the facts of this case are "strikingly similar" to the facts of *Brock*, and the Court concludes that the evidence sufficed to show defendant's membership in the

charged crack cocaine conspiracy.

Defendant further contends that the Court erred with respect to its *Geaney* finding to allow the introduction of alleged co-conspirator statements. *See* Doc. #794 at 13–14; *see also United States v. Cicale*, 691 F.2d 95, 103 (2d Cir. 1982) (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). As the Second Circuit has noted, however, "once a conspiracy has been proved to exist, the evidence needed to link another defendant with it (for purposes of a *Geaney* finding) need not be overwhelming," and "all that is required to meet the *Geaney* threshold is a showing of a likelihood of an illicit association between the declarant and the defendant." *Ibid.* (internal quotation marks and citations omitted). Here, defendant does not contest the existence of a conspiracy among at least some people, and the contents of his multiple wiretap conversations with Melkuan Scott are not reasonably susceptible to any interpretation other than that they were for an illicit purpose of furthering a conspiracy's cocaine transactions. There is no merit to defendant's argument that co-conspirator statements were improperly admitted against him.

Defendant further contends that certain evidence was admitted at trial involving transactions or evidence that did not personally involve him. *See* Doc. #794 at 14–15. But this evidence was doubtlessly proper and relevant to show the existence of and scope of the alleged crack cocaine conspiracy, as distinct from whether defendant was himself a member of the conspiracy. *See, e.g.*, *United States v. Brady*, 26 F.3d 282, 287–88 (2d Cir. 1994). The Court also granted defendant's request at trial to instruct the jury on the limitations of this evidence, especially with respect to making clear that the government did not contend that defendant himself engaged in any violent conduct.

Defendant otherwise lists other alleged trial errors: that the Court erred in declining to

suppress wiretap intercepts; that the Court erred in declining to grant a severance or mistrial; that the Court erred in declining to grant a continuance for the defense to investigate the proffered statements of Ricardo Howe; and that the Court erred in not having the cross-examination of Ricardo Howe read back to the jury in connection with the read-back of Howe's testimony on direct examination. *See* Doc. #792 at 2–3. But the Court has previously considered and rejected defendant's arguments with respect to each of these issues, and defendant has failed to elaborate upon any of these arguments in his post-trial briefing. *See generally* Doc. #794; *see also* D. Conn. L. Cr. R. 1(c) (incorporating D. Conn. L. Civ. R. 7(a)(1) requiring any relief requested by motion that involves a disputed issue of law to be accompanied by a written memorandum of law and specific reference to portions of the record). Accordingly, the Court declines to consider these claims again.

### CONCLUSION

Defendant's Motion for Judgment of Acquittal (Doc. #793) and Motion for New Trial (Doc. #792) are DENIED.

It is so ordered.

Dated at Bridgeport this 11th day of August 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge